UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANK DiBLASI,

                                Plaintiff,

    -v-                                                    1:06-CV-1378

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, NY 12414

OFFICE OF REGIONAL GENERAL COUNSEL    SUSAN J. REISS, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff Frank DiBlasi ("claimant" or "DiBlasi") brought this action pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Supplemental Security Income benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Claimant filed his application for Supplemental Security Income benefits on November 10, 2003, claiming that he had been disabled since January 26, 2000, due to depression, diabetes, high cholesterol, and limb numbness. After initial adverse determinations, claimant requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Larry K. Banks held a hearing on June 15, 2005. The ALJ issued an unfavorable decision on February 8, 2006. DiBlasi requested review of this determination from the Appeals Council on February 14, 2006.

According to claimant, on October 26, 2006, he provided new, material evidence to the Appeals Council by facsimile transmission ("fax"). Apparently this new evidence consisted of an assessment by Carl Rinzler, M.D. of the Columbia County Mental Health Center ("CCMHC") on October 6, 2006. However, claimant has not submitted this assessment but merely quotes from it in his brief. Further, there is no evidence that the Appeals Council received the assessment, and claimant did not file a completed "successful transmission" report for the purported fax to the Appeals Council to establish that it was received.

On October 30, 2006, the Appeals Council denied review. The decision of the ALJ therefore became the final decision of the Commissioner and claimant filed this action.

## III. STANDARDS

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, (2d Cir. 2009) (per curiam) (citing

Machadia v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)). If the commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is

shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  <u>Id</u>. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings.  <u>Id</u>. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); <u>Parker</u>, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); <u>Simmons v. United States R.R. Ret. Bd.</u>, 982 F.2d 49, 57 (2d Cir. 1992) (same); <u>Williams</u>, 859 F.2d at 261 (same).

### B.  <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[1]  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of

---

[1] The requirements for a finding of disability under 42 U.S.C. § 1382(c) for the purposes of determining eligibility for Supplemental Security Income are the same as the requirements under 42 U.S.C. § 423(d) for the purposes of determining eligibility for Social Security Disability.  Therefore, the requirements as set forth below do not distinguish between the two types of benefits.

>substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge (ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record'" it is given significant weight. Poupore, 566 F3d. at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id.

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. Id. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV. DISCUSSION

DiBlasi contends there are three issues on this appeal. First he argues that the Appeals Council failed to consider the new, material evidence submitted on October 26, 2006, violating his due process and equal protection rights. Second, he argues that the

Appeals Council erred in failing to remand the matter to the ALJ for clarification of the June 2, 2005, opinion of CCMHC, which the ALJ failed to do in the first instance.  Finally, DiBlasi contends that it was error not to remand the matter in light of the ALJ's "arbitrary and capricious" ignoring of a June 16, 2005, letter from CCMHC signed by his psychiatrist.

In response, in addition to pointing out that there is no evidence the Appeals Council received the purported new evidence, the Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.  Claimant's Contentions

### 1.  New Evidence

According to the claimant, the October 5, 2006, assessment by Dr. Rinzler states that he decompensates after attempting to work and he continues to have high anxiety about this.  Additionally, it states that he is an isolated individual who cannot function in the workplace.  It notes that claimant has maintained his sobriety.  However, it rates his Global Assessment of Functioning ("GAF") at 50.

As noted above, there is nothing in the record to establish that DiBlasi's purportedly new, material evidence was received by the Appeals Council.  Further, claimant purportedly submitted the evidence only four days prior to the Appeals Council issued its decision, although the claimant requested review of the ALJ's decision months earlier, on February 14, 2006.

The CCMHC treatment plan dated January 26, 2004, indicated that DiBlasi struggled with depression and anxiety.  (Tr. at 107.)  It noted that he had severe withdrawn behaviors and an inability to socialize normally in groups.  Id. at 109.  The plan reflects that he has been unable to maintain employment and he resides with his mother.  Id. at 113-15.

The plan stated claimant's current GAF was 60, and his highest GAF in the last year was 65. A CCMHC assessment on June 2, 2005, also rated claimant's current GAF to be 60. Id. at 168. This assessment also reflected DiBlasi's social difficulties and inability to obtain and maintain employment. Id. at 169. A letter from CCMHC on June 16, 2005, reiterates claimant's problems with employment, depression, and anxiety. Id. at 185.

In order to justify a remand for consideration of new evidence, a claimant must show that evidence is "new and not merely cumulative . . . and . . . material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative") (internal quotations and citations omitted). Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991). In order to be considered material, there must be "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Id. Finally, good cause must be shown for failing to previously present the evidence. Id.; 42 U.S.C. § 405(g).

A comparison with what was previously in the record and what is purported to be in the October 5, 2006, assessment of Dr. Rinzler reveals almost identical information. Claimant has depression, anxiety, socialization difficulties, and inabilitiy to obtain and maintain employment. The only difference is that the record reflects a GAF of 60, while the October 5, 2006, assessment reportedly states that claimant's GAF is 50. Claimant gives no explanation as to why the differing GAF should alter the conclusion as to his entitlement to benefits.[2] This purported new evidence is merely cumulative of that already in the record, Further, to the extent the GAF is not cumulative, plaintiff has not established that it was

---

[2] The Commissioner notes that a score of sixty indicates no more than a moderate impairment of functioning.

relevant to DiBlasi's condition during the time for which he sought benefits, nor that it would have influenced the Commissioner's decision. Moreover, claimant has not shown any cause why this evidence was not submitted sooner. In sum, claimant is not entitled to remand for consideration of new evidence.

### 2. Clarification of June 2, 2005, CCMHC Opinion

Claimant argues that the Appeals Council erred in not remanding the matter for the ALJ to clarify the June 2, 2005, opinion of CCMHC. The June 2, 2005, opinion assessed that DiBlasi had a severe problem with obtaining and maintaining competitive employment. (Tr. at 169.) Claimant contends that the October 5, 2006, letter from CCMHC clarifies this assessment. However, as noted above, the record beginning when claimant first applied for benefits consistently has reflected his difficulty socializing and the resultant problems obtaining and maintaining work. There was no error in "failing to clarify" opinions that DiBlasi had severe problems obtaining and maintaining employment.

### 3. June 16, 2005, CCMHC Letter

DiBlasi argues that the ALJ ignored the June 16, 2005, letter which was reviewed by his psychiatrist Dr. Rinzler. As set forth above, this letter reiterates that DiBlasi has depression and anxiety, among other disorders, which are exacerbated by stress and which make it difficult for him to handle competitive employment. The record is replete with evidence of claimant's disorders and resulting difficulty handling a work environment. Thus, it would be irrelevant even if the ALJ did ignore the June 16, 2005, letter, because there was sufficient other evidence in the record of DiBlasi's disorders and employment difficulties.

### B. Commissioner's Contention--Substantial Evidence Supporting Decision

The ALJ first determined that DiBlasi has not engaged in substantial gainful activity since January 26, 2000. (Tr. at 16.) Next he determined that claimant had severe impairments of affective disorder, asthma, and diabetes. Id. Third, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Id. at 17.

At the fourth step, the ALJ found that claimant could perform a less than full range of light exertional work. Dr. Gilly opined that claimant could occasionally lift and carry up to 20 pounds, stand and/or walk less than two hours per day, perform limited push and/or pull, and had no limitation on sitting. Id. at 139. Neurologist Dominic J. Sette-Ducati, M.D. found that DiBlasi had no focal neurological deficit. Id. at 146. Dr. Manar Hanna did not note any exertional limitations. Id. at 147-50. Thus, substantial evidence supports the ALJ's findings that claimant has less than a full range of exertional requirements for light work. See 20 C.F.R. § 416.967(b) (a full range of light work requires frequent lifting of objects up to 10 pounds, significant amounts of walking or standing, or mostly sitting with some pushing and pulling).

The ALJ further found that DiBlasi had non-exertional limitations including complete avoidance of smoke, dust, or known respiratory irritants due to asthma, and he had mild to moderate difficulty in social functioning and daily activities. The ALJ found that these limitations resulted in DiBlasi being limited to performing simple routine unskilled tasks involving nor more than minimal stress and no more than minimal contact with the public, co-workers, or supervisors. Dr. Hanna opined that because of asthma DiBlasi should avoid smoke dust, and respiratory irritants, but no other limitations are noted on his report. (Tr. at

147-50.)  The CCMHC functional assessment of June 2, 2005, indicates claimant had moderate problems with socialization, appropriate response to individuals in authority, and ability to schedule and keep appointments.  Id. at 169.  It indicates a severe problem with obtaining and maintaining competitive employment, but includes no specific facts as to why.  Id.  It noted that claimant was anxious, constricted, depressed, somewhat tangential at times, had difficulty concentrating, and was worried about finances and his ability to meet his needs.  Id. at 171-72.

The December 10, 2003, opinion of Patricia Keating, CSW, notes that DiBlasi's psychiatric instability limits his ability to work, that he becomes hypersensitive, overwhelmed by stress, and reacts inappropriately.  Id. at 104.  This opinion was apparently based upon claimant's recent loss of two jobs as well as his reports to her of being stressed and acting inappropriately at work.  Id.  However, the CCMHC assessment of June 6, 2000, indicates that he lost jobs because of his drug use.  Id. at 113, 115.  It is noted that DiBlasi has completed treatment for alcohol and drug use, but did have a relapse with regard to marijuana.  Id. at 107 (CCMHC assessment of January 26, 2004).  At his hearing before the ALJ on June 15, 2005, claimant testified that he had held about 10 to 15 cab driver jobs over the course of his life, but he would become stressed and anxious, leading to drug use then losing the job.  Id. at 194, 197, 200-01.  He also testified that at the time of the hearing he had been sober for about one year.  Id. at 197.

The foregoing constitutes substantial evidence in support of the ALJ's determination that DiBlasi can perform simple routine unskilled tasks involving nor more than minimal stress, excluding production pace work, with no more than minimal contact with the public.

Because DiBlasi was limited to less than a full range of light work, and his previous work as a cab driver was classified as medium work, the ALJ found that he could no longer perform his past relevant work.

The ALJ then proceeded to the final step of determining whether work existed in the national economy that claimant could perform.  He noted that DiBlasi was 37 years old on the date he allegedly became disabled, classifying him as a younger individual.  He found the claimant to have at least a high school education and the ability to communicate in English.  Further he determined that transferability of job skills was not material because of DiBlasi's age. Because of claimant's nonexertional limitations, the ALJ inquired of a vocational expert, Dr. Adina Platt Leviton, whether there were light exertional level jobs in the national economy for an individual at claimant's age, with at least a high school education, some work experience as a cab driver, and the need to avoid environmental pollutants, taking into consideration moderate difficulties in social functioning, concentration, persistence, and pace, as well as being limited to performing simple, routine, unskilled tasks involving no more than minimum stress.  Id. at 208-09.  The ALJ further excluded production line type of work, and limited contact with the public, coworkers, or supervisors.  Id.  Dr. Leviton opined that the position of filler for semiconductor packages fit the hypothetical limitations, and over 356,000 existed nationally and 1,500 regionally.  Id. 209.  She also opined that a position as a cleaner, with over 409,000 nationally and 700 regionally, would meet the specified requirements.  Id.  Dr. Leviton opined that the position of marker in an inspection capacity would meet the requirements and there were 177,000 such positions nationally and 600 regionally.  Id.  Dr. Leviton testified that her testimony about the

availability of jobs in the national economy was consistent with the Dictionary of Occupational Titles.  Id.

At the hearing claimant's counsel questioned whether these jobs would require frequent contact with a supervisor, which would be contrary to claimant's limitations.  Id. at 210-11.  The ALJ interjected and specifically asked if the jobs cited would required only minimal contact with the public or a supervisor.  Id. at 211.  Dr. Leviton responded affirmatively.  Id.  DiBlasi's counsel also questioned whether claimant's difficulties with personal hygiene, as well as restlessness and being fidgety would interfere with his ability to perform any of these jobs.  Id. at 211-12.  Dr. Leviton indicted that it would interfere, but she could not be sure of the extent.  Claimant's counsel stated that the problem was that he did not have a medical source statement from Mental Health regarding this issue.  Id. at 212.  He indicted that he would attempt to get clarification on this point and the ALJ left the record open for two weeks for claimant to submit this information.  There is no indication that additional clarification on this point was timely submitted.

Based upon Dr. Leviton's testimony, the ALJ determined that there are jobs in significant numbers in the national economy that claimant could perform.  Thus, he determined that claimant was not disabled for the purposes of Supplemental Security Income.  As set forth above, substantial evidence supports the determination that work exists in the economy that DiBlasi can perform.  See   Poupore, 566 F.3d at 306.

## V.  CONCLUSION

DiBlasi's purported new evidence is cumulative rather than new and material, and he has not shown good cause why it was not submitted earlier.  There was no error in the Appeals Council not remanding for clarification of the June 2, 2005, CCMHC opinion

- 13 -

because claimant's records consistently showed difficulties with social and employment situations. Similarly, even if the ALJ did ignore Dr. Rinzler's June 16, 2005, letter, there was no error since the letter merely reiterated DiBlasi's socialization disorder and problematic employment prospects. Finally, substantial evidence supported the determination that work exists in the national economy that DiBlasi can perform and therefore he is not disabled.

    Accordingly, it is

    ORDERED that the determination of the Commissioner is AFFIRMED.

    IT IS SO ORDERED.

_____
United States District Judge

Dated: August 24, 2009
       Utica, New York.